UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK DAVID SANDERSFIELD, III,

Case No. No. 17-10663

Plaintiff,                    District Judge Victoria A. Roberts

v.                                          Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jack David Sandersfield, III ("Plaintiff") brings this action under 42 U.S.C.

§405(g), challenging a final decision of Defendant Commissioner denying his application for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The

parties have filed cross-motions for summary judgment which have been referred for a

Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth

below, I recommend that Defendant's Motion for Summary Judgment be GRANTED

[Docket #19] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #16].

## I.  PROCEDURAL HISTORY

On April 30, 2014, Plaintiff filed an application for SSI, alleging disability as of

-1-

November 6, 2000[1] (Tr. 185).   Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on July 27, 2016 in Mount Pleasant, Michigan (Tr. 53). Administrative Law Judge ("ALJ") Laura Chess presided.  Plaintiff, represented by attorney John Morosi, testified, as did Vocational Expert ("VE") Richard Riedl (Tr. 60-75, 76-88). On October 12, 2016, ALJ Chess determined that Plaintiff was capable of a significant range of unskilled, exertionally sedentary work (Tr. 34-47).   On January 30, 2017, the Appeals Council declined to review the administrative decision (Tr. 1-3).  Plaintiff filed suit in this Court on March 2, 2017.

## II.  BACKGROUND FACTS

Plaintiff, born March 16, 1977, was 39 at the time of the administrative decision (Tr. 47, 185).   He completed high school and worked previously as a fast food worker, dishwasher, prep cook, laborer, and security guard (Tr. 214).  He alleges disability as a result of learning disabilities, neck and lumbar spine pain, a speech impediment, an enlarged heart, and diabetes (Tr. 213).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

Since 2006, his work activity had been limited to short-term seasonal positions (Tr. 61).  He was placed in special education throughout primary and secondary school (Tr. 61).

---

[1]Plaintiff made multiple previous applications for SSI, the last of which was denied on September 27, 2012 (Tr. 90-110).

He did not have a current driver's license due to his failure to pay for his driving exam (Tr. 61-62).  He stood 5' 11" and weighed 367 pounds (Tr. 62).  Since the last determination of non-disability, his condition had gotten worse due to left hip problems and leg numbness (Tr. 62).  He would be unable to perform even sedentary work due to his tendency to "doze off" (Tr. 63).  He had not contacted vocational rehabilitation services (Tr. 63).

In response to questioning by his attorney, Plaintiff testified that he sought medical treatment in 2014 after experiencing lower left leg numbness while mowing the grass (Tr. 64).  Upon experiencing the leg numbness, he required up to 20 minutes recovery time before resuming his activity (Tr. 64).  He also experienced leg numbness with "a little bit of pain" after sitting for long periods (Tr. 65).  Due to sleep apnea, he was unable to sleep more than a total of three hours a night even with the use of a CPAP machine (Tr. 65).  Back and leg pain also caused sleep disturbances (Tr. 66).  He moved in with his mother in 2005 to take care of his father (Tr. 66-67).  He continued to live with his mother after his father passed away in 2006 (Tr. 66-67).  He spent his days watching television and going out with friends (Tr. 67).

In addition to the back and leg problems, he had been diagnosed with tendinitis of the left shoulder (Tr. 67).  His shoulder problem was precipitated by lifting an "impact gun" (Tr. 67-68).  He no longer worked on car motors or transmissions due to physical problems (Tr. 68).  He had not experienced recent significant neck problems (Tr. 69).  Occasionally, his hands became numb while using a screwdriver or small nuts (Tr. 70).  He experienced some

degree of hand problems "every time" he tried to "rebuild a carburetor" for his lawn mower (Tr. 70). He worked on motors to keep his mind busy, but was unable to obtain a job due to his speech impediment which made him sound drunk (Tr. 70). He took blood pressure and diabetes medication on a regular basis (Tr. 71). He experienced shortness of breath due to an enlarged heart but did not use inhalers (Tr. 72).

Due to a learning disability, Plaintiff's math and reading skills were limited to the third or fourth grade level (Tr. 72). He had trouble pronouncing big words (Tr. 73). He could read the sports page of a newspaper (Tr. 73). He was able to mow the lawn so long as his mother started the engine, was capable of following verbal and written instructions, and enjoyed watching television, playing video games, visiting and texting with his sister, his son, and friends (Tr. 74). At the time of the hearing he was required to stop "three or four times" when walking half a mile (Tr. 75). He was able to take care of his personal needs except for requiring help putting on his socks (Tr. 75).

**B. Medical Records[2]**

**1. Records Related to Plaintiff's Treatment[3]**

In November, 2009, pain management specialist John N. DiBella, M.D. administered an epidural steroid injection for "mild radiculopathy" (Tr. 522). In April, 2010, Dr. DiBella

---

[2]Records significantly predating the alleged onset date of January 30, 2013, while reviewed in full, are omitted from the present discussion.

[3]Records created prior to the period under consideration (before April 3, 2014) are included for background purposes only (Tr. 47).

noted positive straight leg raising on the left with "mild" weakness (Tr. 525). Plaintiff reported good results from injections (Tr. 526, 529).

January, 2013 polymomnography interpretation studies made in response to reports of sleep apnea noted that Plaintiff stood 5' 8" and weighed 403 pounds (Tr. 532). He was diagnosed with severe obstructive sleep apnea (Tr. 533). He was prescribed a CPAP device (Tr. 522). In October, 2013, Plaintiff sought emergency treatment for back pain (Tr. 401).

In April, 2014, Plaintiff reported back pain after "doing a lot of work outside" (Tr. 414). He reported that the pain had started approximately one month earlier (Tr. 414). In June, 2014, Beth Weaver, R.N. noted Plaintiff's report of back pain and lower leg numbness with activity (Tr. 411-413). An MRI of the lumbar spine showed a "small to moderate-sized herniated disc at L5-S1 as well as a bulging (but no herniated) disc at L4-L5 (Tr. 431, 520, 590). In July, 2014, Weaver advised Plaintiff to lose weight (Tr. 440).

In September, 2014, neurosurgeon Jayant Jagannathan, M.D. noted Plaintiff's report of "intractable" low back and lower left extremity pain (Tr. 448). Plaintiff reported that neither physical therapy nor steroid injections improved his condition (Tr. 448). Dr. Jagannathan noted 5/5 strength of the lower extremities and normal neurological findings (Tr. 448). Plaintiff exhibited good muscle tone but spoke with a speech impediment and exhibited an antalgic gait (Tr. 450). Dr. Jagannathan noted that a sensory exam was "suggestive of peripheral polyneuropathy" (Tr. 451). He noted that Plaintiff wanted to proceed with surgery (Tr. 448). Nerve conduction studies showed the presence of left-sided

L1 radicuolopathy (Tr. 454).

In October, 2014, neurosurgeon Srinivas Chadravarthi, M.D., noting Plaintiff's report of level "seven" pain on a one to ten scale, opined that due to Plaintiff's weight, he was "extremely high risk [for] surgery" (Tr. 462). He recommended weight loss through surgery or weight loss clinics (Tr. 462). February, 2015 sleep studies showed a significant reduction in sleep apnea symptoms with the use of a CPAP device (Tr. 552-554). Plaintiff denied improvement in sleep apnea symptoms since being prescribed the CPAP device in 2013 but admitted that he did not like using it (Tr. 556). He reported that he slept only one to two hours each night but was observed sleeping greater than six hours on the night of his testing (Tr. 557). He was urged to comply with treatment recommendations for the regular use of the CPAP device (Tr. 556-557).

Plaintiff sought emergency treatment in June, 2015 for cervical spine pain (Tr. 476-477). Treating notes state that he appeared to be in "mild" pain (Tr. 476). In October, 2015, Plaintiff sought treatment for right wrist and right foot pain (Tr. 481). Imaging studies of the right wrist showed only mild degenerative changes (Tr. 483). Studies of the right wrist were unremarkable (Tr. 484). Four days later, Plaintiff again sought emergency treatment, reporting left rotator cuff problems (Tr. 487). He was diagnosed with bilateral tendinitis (Tr. 489). November, 2015 podiatry records show foot pain due to long toe nails (Tr. 470). Imaging studies of the left shoulder from the same month were unremarkable (Tr. 491, 519). Plaintiff against sought emergency treatment for left arm pain (Tr. 492). He reported a left

arm injury three weeks earlier while stacking firewood (Tr. 493-494). Imaging studies of the left arm were unremarkable (Tr. 496). He was prescribed over-the-counter pain medication (Tr. 497).

In February, 2016, Plaintiff sought treatment fo insomnia, noting that he had "moderate" difficulty falling asleep (Tr. 512). A physical examination was otherwise normal (Tr. 514). Plaintiff sought emergency treatment in April, 2016 for left side face pain (Tr. 503). He was diagnosed with dental problems (Tr. 506). In June, 2016, Plaintiff sought emergency treatment for left shoulder pain after "working on a vehicle" (Tr. 601-602, 607). Imaging studies of the left shoulder showed degenerative changes (Tr. 605, 608). June, 2016 records state that Plaintiff denied problems sleeping despite the shoulder pain (Tr. 596). July, 2016 records by Weaver note a recent MRI showing left-sided severe tendinitis of the supraspinatus tendon (Tr. 592, 611). Plaintiff demonstrated a decreased range of left abduction and adduction motion (Tr. 597).

### 2. Non-Treating Records

In February, 2008, Richard C. Gause, M.D. performed a consultative examination of Plaintiff on behalf of the SSA, finding "some impairment with dexterity [and] strength," and numbness (Tr. 394). Dr. Gause noted that despite a speech impediment and learning disability, Plaintiff was able to complete one-and-a-half years of college (Tr. 394).

In October, 2014, psychiatrist Robert Newhouse, M.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding mild limitation

in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 117). He concluded that Plaintiff was capable of "simple tasks on [a] sustained basis" (Tr. 123). In November, 2014 Dale Blum, M.D. performed a non-examining review of the medical records on behalf of the SSA, finding that Plaintiff was limited to lifting 10 pounds; sitting for six hours a day and standing or walking for two; and that Plaintiff experienced impairments in pushing in the lower left extremity (Tr. 119). He limited Plaintiff to occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs (Tr. 119). He precluded all climbing ladders, ropes, or scaffolds (Tr. 119). As to manipulative functioning, Dr. Blum restricted Plaintiff to occasional bilateral overhead reaching (Tr. 120). Dr. Blum found that due to a lisp, "[a]ctivities requiring good clear speech should be avoided (Tr. 120). He found that Plaintiff should avoid concentrated exposure to extreme cold and even moderate exposure to hazards such as heights or machinery (Tr. 120-121).

### C. Vocational Testimony

VE Riedl testified that none of Plaintiff's work activity in the past 15 years amounted to "Substantial Gainful Activity" as required for a showing of past relevant work (Tr. 76). ALJ Chess posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and lack of work history:

> This hypothetical worker could lift and/or carry 20 pounds occasionally and 10 pounds frequently. Stand or walk for four hours in an eight-hour workday and sit six hours in an eight-hour work day with normal breaks. The individual could never climb ladders ropes, or scaffolds, although . . . they could

occasionally climb ramps and stairs.  They could occasionally balance, stoop, kneel crouch, or crawl.  This individual could have no overhead reaching with the bilateral upper extremities, could frequently handle, finger, and feel with the bilateral upper extremities.   The individual could tolerate frequent, although not constant, exposure to extreme cold, humidity, fumes, dust, gasses, odors, and poor ventilation.  The individual could tolerate frequent, but not constant work at unprotected heights or around dangerous moving machinery. The individual would be capable of performing simple tasks, defined as those that can be learned within 30 days and could perform work in an environment requiring only minimal, or basic oral communication skills.  Would there be work in the national economy that such an individual could perform, and if so could you provide representative examples? (Tr. 76-77).

The VE testified that the above limitations would  allow for the light, unskilled work of a packager (170,000 positions in the national economy); simple assembler (70,000); and production inspector (135,000)[4](Tr. 78-79).  The VE stated that his testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*"), adding that the testimony as to the limitations of standing, walking, and speaking were based on his own professional experience (Tr. 79).

The ALJ then posed a second hypothetical question, again describing an individual of Plaintiff's age, education, and lack of work experience:

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light*  work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

Such an individual could lift and/or carry ten pounds occasionally and less than ten pounds frequently.  Stand and/or walk for two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday.  The individual could push and/or pull only occasionally with the left lower extremity. Pushing and pulling would otherwise be unlimited other than as shown for lift and/or carry.  The individual would need to stretch or change position for up to two minutes every hour while remaining on task and at the workstation. The individual could never climb ladders, ropes, or scaffolds, although they could occasionally climb ramps and stairs.  They could occasionally balance, stoop, kneel, crouch, and crawl.  there should be no reaching overhead with the bilateral upper extremities.  And the individual could frequently, although no constantly, handle, finger, and feel with the bilateral upper extremities.  The work should be performed in an environment requiring minimal or basic oral communication skills.  The individual could tolerate frequent but not constant exposure to extreme cold, wetness, vibration, as well as dust, fumes, odors, gasses, poor ventilation, and other pulmonary irritants in the work setting. There should be no work at unprotected heights or in the vicinity of unprotected dangerous machinery.  The individual could perform routine and repetitive tasks as well as simple tasks defined as those that can be learned within 30 days.  This . . . individual could tolerate frequent, but not constant interaction with coworkers, supervisors, and the public.  Would there be work in the national economy that such an individual could perform? (Tr. 79-80).

The ALJ also included the restrictions of the need to stretch and change positions two minutes every hour (Tr. 81).

The VE testified that the additional restrictions would limit the individual to sedentary work and reduce the above-cited job numbers: packager position (reduced to 35,000); assembler (45,000); and inspector (40,000) (Tr. 81-82).  He added that a limitation to the fourth grade level in math or reading skills would not change the job findings (Tr. 83).  He stated that the need to miss two days of work each month, or, the need to take 60-minute unscheduled breaks at work would preclude all work (Tr. 84-85).

-10-

### D.   The ALJ's Determination

Citing the medical transcript, ALJ Chess found that Plaintiff experienced the severe impairments of "status post cervical/thoracic spine fusion, status post fracture of L5 and herniation in the lumbar spine, recurrent radiculopathy at L5-S1, mild osteoarthritis of the acromioclavicular joint of the left shoulder, tendinosis of the left upper extremity, hypertension, obesity, asthma, diabetes mellitus, insomnia, obstructive sleep apnea, and learning disability with history of speech impediment" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 37). She found that Plaintiff experienced mild restriction in activities of daily living and moderate restriction in social functioning and concentration, persistence, or pace (Tr. 39).  ALJ Chess determined that Plaintiff had an RFC for sedentary work with the following additional restrictions:

> [H]e can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently.  He can stand and/or walk for two hours in an eight-hour workday and sit for about six hours in an eight-hour workday.  He can occasionally push and/or pull with the left lower extremity, with pushing and pulling otherwise unlimited other than as shown for lift and/or carry.  He must stretch or change position for up to two minutes every hour, while remaining on task and at the work station.  He can never climb ladders, ropes, or scaffolds.  He can occasionally climb ramps and stairs.  He can occasionally balance, stoop, kneel, crouch, and crawl.  He can perform no overhead reaching with the bilateral upper extremities.  He can frequently (but not constantly) handle, finger, and feel with the bilateral upper extremities.  The work should be performed in an environment requiring minimal or basic oral communication skills.  He can tolerate frequent (but not constant) exposure to extreme cold, wetness, vibration, and dust, fumes, odors, gases, poor ventilation, and other pulmonary irritants in the work setting.  He can do no work at unprotected heights or in the vicinity of unprotected dangerous machinery.  He can perform

routine and repetitive tasks. He can perform simple tasks, defined as those that can be learned within 30 days. He can tolerate frequent (but not constant) interaction with coworkers, supervisors, and the public (Tr. 40).

Citing the VE's testimony, the ALJ determined that Plaintiff could perform the sedentary work of a packager, assembler, and inspector (Tr. 47, 81-82).

The ALJ discounted Plaintiff's professed degree of limitation. She cited the physical examinations showing "minimal significant abnormalities" and "normal strength, a normal gait, no cranial deficits," negative neurological signs, and good reflexes (Tr. 44). She noted that his claim that he only slept one to two hours a night was inconsistent with "his observed greater than six hours of sleep during his polysomnography" (Tr. 44). She also noted that Plaintiff's ability to complete high school, attend some college, rake leaves, work on cars, stack wood, and read about four wheelers stood at odds with his claim that he was physically and mentally incapable of performing unskilled work (Tr. 44).

## III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

Plaintiff makes four arguments in favor of remand, contending first that the hypothetical question which formed the basis of the RFC found in the administrative opinion did not account for his full degree of physical and mental limitation.  Next, he argues, in effect, that the ALJ erred by declining to find at Step Three of the sequential analysis that the back condition rendered him disabled.  Third, he contends that the hypothetical question and corresponding RFC did not adequately address workplace limitations brought about by his speech disarticulation.  Fourth and finally, he disputes the ALJ's finding that his allegations of limitation were not credible.

Because Plaintiff's fourth contention is at least partially dispositive of the other three arguments, it will be considered first.  His second argument regarding the Step Three findings will be considered next.  Finally, because arguments one and three both pertain to the ALJ's choice of hypothetical limitations, they can be considered in tandem.

### A.  The Credibility Determination (Argument Four)

Here, Plaintiff contends that the ALJ improperly discounted his allegations of physical limitation.  *Plaintiff's Brief,* 18-19, *Docket #16,* Pg ID 679.  He argues that neurologists Dr. Jagannathan and Dr. Chakravarthi both "believed [the] complaints and diagnostic testing were supported by the cited evidence." *Id.* at 19; (Tr. 450-451, 461–462).

-14-

SSR 16-3p applies to the evaluation of a claimant's subjective allegations in administrative determinations made on or after March 28, 2016. In contrast to the superceded Ruling (SSR 96-7p), the newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." *Id.* at *1-3; *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929. SSR 16–3p sets forth the standard for evaluating the alleged limitations using a two-step process. *Id.* at *3. First, the ALJ determines whether the claimant has a medically-determinable impairment that could reasonably be expected to produce the alleged pain or limitation. *Id.* at *3. Next, the ALJ evaluates the claims of limitation not reflected in the objective evidence. *Id.* at *3-4. The ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.[5]

---

[5]

In addition to an analysis of the medical evidence, 20 C.F.R. §§ 404.1529(c)(3), 416.929 list the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or

The ALJ did not err in discounting Plaintiff's allegations of disabling pain in favor of other evidence (44-45).  The ALJ acknowledged that Drs. Jagannathan and Chadravarthi discussed the possibility of back surgery, noting that Dr. Chardravarthi recommended against surgery because of the potential complications due to obesity (Tr. 44, 462).  While Plaintiff argues that the records of the two neurologists confirm his claim of disabling limitations, he relies chiefly on the portion of these records restating his own allegations of limitation (Tr. 450).  For example while the records note Plaintiff's allegations of intermittent pain and numbness, Dr. Jagannathan noted 5/5 strength and normal muscle tone (Tr. 450).    Dr. Chadravarthi observed some range of motion limitations but noted "no other neurological deficits" (Tr. 462) and that the MRI of the lumbar spine showed "no foramina stenosis" (Tr. 462).    While the nerve conduction studies of the lower extremities showed left S1 radiculopathy, the studies showed otherwise unremarkable results (Tr. 454).

The ALJ's determination that Plaintiff's allegations were not fully consistent with the medical and other evidence is otherwise well supported and explained.  She noted that while back surgery was contemplated in 2014, the more recent records show that Plaintiff did not seek specialized care for his back condition on a regular basis.  The ALJ noted that Plaintiff's report that he slept only one to two hours a night was contradicted by his ability to sleep for at least six during the sleep studies (Tr. 44).  She found that the allegations of disability

other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

-16-

resulting from speech problems and a learning impairment were undermined by his ability to finish high school, attend college for a year-and-a-half, and read about subjects that interested him (Tr. 44). The ALJ found further that the RFC for sedentary work was supported by Plaintiff's regular activities including working on cars, stacking firewood, and raking leaves (Tr. 44). She cited Plaintiff's report that he would not experience problems passing a driving test (Tr. 45, 61-62). Because the ALJ's partial rejection of Plaintiff's allegations of limitation is supported by substantial evidence and well articulated, it should not be disturbed. *See Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007) (*citing Walters v. CSS*, 127 F.3d 525, 531 (6th Cir. 1997))(an ALJ's determination of the relative credit apportioned to claimant's allegations and other evidence entitled to "great weight").

### B. The Step Three Determination (Argument Two)

Plaintiff also argues that the ALJ erred at Step Three of the analysis by finding that he did not meet Listing 1.04. *Plaintiff's Brief* at 16-17; 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04.

At Step Three of the administrative sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled [] and entitled to benefits." *Reynolds v. Commissioner of Social Security,* 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful

activity, regardless of his or her age, education, or work experience.'" *Id.* (citing 20 C.F.R. § 404.1525(a)).

For a disability finding under Listing 1.04, the claimant must make a threshold showing of a spinal disorder such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture[], resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04. The MRI showing a herniated disc at L5-S1 shows that he has met the introductory prong of the Listing. Plaintiff appears to argue that he also meets the additional requirements of 1.04(A):

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Plaintiff's contention that he met all of the A criteria findings is contradicted by the record. None of the records suggests that he experienced atrophy with muscle weakness as required for 1.04(A). The failure to present evidence of one of the elements of the Listing 1.04(A) forecloses a finding of disability at Step Three. *See Houston v. Colvin*, 2017 WL 82976, at *2 (E.D.Mich. January 10, 2017)(Drain, J.)(same). Moreover, the ALJ adequately explained her findings at Step Three, citing Listing 1.04(A) and noting that Plaintiff did not meet all of its requirements (Tr. 37). Elsewhere in the determination, the ALJ observed that the finding that Plaintiff did not meet the Listing was supported by the conclusions of Dr.

Blum (Tr. 45, 118-121).  Because the ALJ's finding that Plaintiff was not disabled under

Listing 1.04(A) well supported and reasoned, a remand on this basis is not warranted.

### C.  The Hypothetical Question/RFC (Arguments One and Three)

In addition, Plaintiff takes issue with the hypothetical question  allowing up to two

hours of standing or walking each day.  *Plaintiff's Brief* at 11-15.  He also argues that the

hypothetical question and corresponding RFC did not account for his workplace limitations

resulting from learning disabilities and a speech impairment.  *Id.* at 18-19.   Plaintiff

is correct that vocational testimony given in response to a question that does include all of a

claimant's relevant limitations does not constitute substantial evidence. *Varley v.

Commissioner of HHS*, 820 F.2d 777, 779 (6th Cir. 1987); *Teverbaugh v. CSS*, 258 F.Supp.2d

702, 706 (E.D. Mich. 2003) (Roberts, J)(reversible error for ALJ to rely upon unsupported job

findings in making a Step Five determination).

As to the physical impairments, Plaintiff argues that he is not capable of

standing/walking for two hours in an eight-hour workday as stated in the hypothetical question

(Tr. 79-80) and ultimate RFC (Tr. 40).  However, the ALJ provided a thorough rationale for

the both the exertional and non-exertional limitations found in the RFC, citing the treating

records showing good muscle tone and normal strength (Tr. 44).  The ALJ also noted that

Plaintiff's ability to rake leaves, work on cars, and stack wood supported the conclusion that

he was capable of standing or walking for two hours and sitting for six in an eight-hour

workday (Tr. 44).  She noted that the back condition and the conditions of enlarged heart,

diabetes, and respiratory problems had been controlled with conservative treatment (Tr. 44). Indeed, my own review of the records, discussed above, shows that Plaintiff was able to engage in a wide variety of physical activities despite his claim that he was unable to perform even sedentary work. Given that the rationale for the hypothetical question/RFC for a limited range of sedentary work is supported by substantial evidence, the ALJ was not required to credit Plaintiff's allegations of greater limitation. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118–119 (6th Cir.1994)(ALJ not obliged to credit rejected claims in question to VE or corresponding RFC).

Likewise, Plaintiff's argument that his speech impairments were not factored into the VE's job findings is not well taken. Plaintiff relies on his testimony that he had not been successful in securing employment because his speech impairment made him sound drunk (Tr. 70). While it is possible that Plaintiff made a bad impression in job interviews due to the speech impairment, none of the treating records suggest that he was not understandable or that he was incapable of effectively communicating with others while performing unskilled work.[6] As such, the restriction of "minimal or basic oral communication skills," found in both the hypothetical question and RFC, adequately accounts for Plaintiff's speech impairment (Tr. 40, 80). Plaintiff's argument that the hypothetical question did not account for his full degree of impairment is further defeated by the VE's additional testimony that "basic" oral

---

[6] Plaintiff's admitted that he had not contacted vocational rehabilitation services or made other efforts to find work which would not be impacted by the speech impairment (Tr. 63).

communication skills were skills allowing him to "communicate at home," "communicate minimally on the job," and "communicate questions and answers [at the hearing]" (Tr. 85-86). The records is absent any indication that Plaintiff experienced difficulty communicating with his family. He was able to offer cogent and understandable testimony at the hearing.  Because the restriction to "minimal or basic oral skills" generously accounts for Plaintiff's speech impairment, a remand is not warranted on this basis.

Accordingly, because the ALJ's decision was generously within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #19] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #16] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

-21-

Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing

party may file a response.  The response shall be not more than 20 pages in length unless by

motion and order such page limit is extended by the court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.


Dated: January 16, 2018                   s/R. Steven Whalen
                                          R. STEVEN WHALEN
                                          U.S. MAGISTRATE JUDGE


---

### CERTIFICATE OF SERVICE

I hereby certify on January 16, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on January 16, 2018.


                                          s/Carolyn M. Ciesla
                                          Case Manager for the
                                          Honorable R. Steven Whalen